E. P. CULVER, AND ELSIE CULVER HIS WIFE, v. W. H. ROGERS, SHERIFF OF EL DORADO COUNTY, AND B. T. HUNT.

WHEN JUDGMENT ON MORTGAGE FORECLOSURE BECOMES A LIEN.—If, in an action brought to recover judgment for a debt, and to foreclose a mortgage given to secure the same, a judgment *in personam* is rendered for the amount due, and directing a sale of the mortgaged premises and an application of the proceeds to the payment of the judgment, the judgment, even if docketed, does not become a lien on the real property of the defendant until the mortgaged property has been sold by the Sheriff, and the balance, if any, reported by him and docketed by the Clerk, and then only for such balance.

ENJOINING SALE OF HOMESTEAD.—If a judgment *in personam* and decree foreclosing a mortgage given to secure the debt, but not covering the homestead, is rendered against a husband, the Sheriff will be enjoined from a sale of the homestead on an execution issued for a balance reported and docketed after a sale of the mortgaged property, if a declaration of homestead is filed and recorded before such balance is reported and docketed.

APPEAL from the District Court, Eleventh Judicial District, El Dorado County.

The personal judgment in case of *Hunt* v. *Culver* was as follows: " Wherefore, by reason of the law and the finding aforesaid, it is ordered, adjudged, and decreed, that B. T. Hunt, plaintiff, have and recover of and from E. P. Culver, defendant, eight hundred and nine dollars and twenty-three cents debt, with interest thereon at the rate of two and a half per cent per month from the date hereof until paid; together with sixteen dollars and thirty-five cents costs of suit." Then followed the usual decree for the sale of the mortgaged premises.

The defendant recovered judgment in the Court below, and plaintiffs appealed.

The other facts are stated in the opinion of the Court.

*George G. Blanchard*, and *A. C. Searle*, for Appellants.

If the lien attached before the 9th day of July, 1863, (the time when the property in controversy became a homestead,) then the sale should not be restrained, and the judgment of the District Court is correct.   But if no lien attached before that date, the sale should not be made, and the judgment is erroneous.   In *Englund* v. *Lewis et al.*, it is determined that *before* the amendment of section two hundred and forty-six of the Practice Act, plaintiff might primarily pursue either the judgment or the decree at his election, but could only pursue one at a time; while in *Cormerais* v. *Genella*, and *Vandewater* v. *McRea, et al.*, 27 Cal. 596, it is held that under section two hundred and forty-six, as amended in 1861, plaintiff " must exhaust the mortgaged property before his judgment can become a lien or he can have execution thereon." These seem to be, and are decisive of the case.

A critical examination of section two hundred and forty-six, before and after the amendment referred to, will convince the most sceptical that it was the intention of the Legislature to compel the plaintiff first to exhaust the security before acquiring any lien on the other property of the judgment debtor. The amended section differs from the original: First, by providing that actions for the foreclosure of liens and mortgages shall be in accordance with the provisions of Chapter One, and section two hundred and forty-six is the only one in this chapter that treats of the judgment or decree in such cases.   Second, it uses the words " decree or judgment," when in the original the word "judgment" is only used.   Third, it provides for the sale of the mortgaged property, and ascertainment of any deficiency thereafter due, and the paying over of surplus, and then the docketing of the judgment for such unpaid balance. Fourth, that the judgment so docketed shall then become a

66

lien upon the real estate of the judgment debtor, and then for an execution for this balance. Fifth, the execution shall be issued by the Clerk of the Court in like manner and form as upon other judgments to collect such balance, etc. The statute makes a distinction between judgments rendered under this section and ordinary judgments, for it speaks of other judgments, and until after sale of the property, ascertainment of deficiency, and docketing of the same, it is not like an ordinary judgment. It is a judgment without lien attributes, as provided in section two hundred and four.

*S. & G. E. Williams*, for Respondents.

We think that the Legislature did not intend to restrict a party to the decree alone, and this Court, in view of the many advantages of the other system, as explained in *Englund* v. *Lewis*, would be unwilling so to decide, unless it is plain that the Legislature so intended. What the Legislature intended by the alterations made in the statute was to conform the statute to the decisions of the Supreme Court, or in other words, to make the statute express in plain language what the Courts had construed it to mean. The first two clauses of section two hundred and forty-six are not essentially different from the old section; the third clause was only intended to apply to the case of a decree alone, and not where a personal judgment had been rendered. That clause, until amended, said nothing about docketing the deficiency so as to become a lien, and you could only obtain a lien by execution. It is this third clause that appellants rely upon, but we are unable to see how it makes so great a change in the statute as to prevent a party from taking and enforcing his personal judgment.

By the Court, CURREY, J.

In January, 1863, the defendant Hunt, as plaintiff, commenced an action in the District Court in El Dorado County against the plaintiff E. P. Culver, as defendant, to recover the amount of two promissory notes, and to foreclose a mortgage

on certain real property, executed by him to secure the payment of the amount due on the notes.  On the 20th of May following the Court "ordered, adjudged and. decreed that B. T. Hunt, plaintiff, have and recover of and from E. P. Culver, defendant, eight hundred and nine dollars and twenty-three cents debt, with interest thereon at the rate of two and a half per cent per month from the date hereof until paid, together with sixteen dollars and twenty-five cents costs of suit;" and immediately following this, the Court decreed that the mortgaged premises be sold by the Sheriff of the county in the same manner as the sales of real property are made under execution, and that the proceeds thereof be applied to the payment of said judgment, and that if the proceeds be insufficient for the purpose, then an execution be issued for the balance remaining due and unpaid.  On the day after this judgment was entered, the Clerk of the Court docketed the same in the Judgment Docket Book.  The mortgaged premises were sold under the decree on the 20th of July, but not for sufficient to satisfy the amount due.  The Sheriff made his return, from which the balance remaining due appeared, and this balance was duly docketed in the Judgment Docket Book on the 18th of August, 1863.  On the 9th of July of the same year the plaintiff, Elsie Culver, caused to be filed and recorded in the Recorder's office of El Dorado County a declaration of homestead on certain real property belonging to herself and husband as common property, on which she and her husband and their family resided and continued to reside to the time of the trial of this action.  The property thus selected by Mrs. Culver as a homestead belonged to herself and husband at the time the judgment and decree was first docketed, and was not a part of the mortgaged premises.  When the same was so selected as a homestead, and when this cause was tried, it was not of the value of five thousand dollars.  In January, 1865, Hunt caused execution to be issued to collect the balance remaining due him on his judgment, and the same was placed in the hands of the defendant, Rogers, Sheriff of said county, who levied the execution upon the property selected by Mrs.

Culver as a homestead, and was proceeding to sell the same thereunder when he was restrained by an injunction granted. in this suit.

The object of this action was to perpetually enjoin the defendants from selling on the execution so issued the property selected and claimed as a homestead.

The appellants' counsel admit that if Hunt's judgment became a general lien on the real property of the judgment debtor in the county, before the time of the filing of the homestead claim, then it would not be proper to restrain the defendants, and we do not understand the respondent's counsel as maintaining that the judgment found for the defendants can be upheld, unless on the ground that the judgment in the foreclosure case, from the time it was first docketed, became a lien on all the real property of the debtor in the county not exempt at the time from execution. So that the question to be decided is divested of all complications.

A judgment becomes a lien on the real estate of the debtor only by force of the statute, and depends for its existence upon conditions of statutory origin. For the recovery of any debt or the enforcement of any right secured by mortgage lien upon real estate or personal property the statute declares there shall be but one action. The statute then further provides: " In such action the Court shall have power by its decree or judgment to direct a sale of the encumbered property (or of such part thereof as shall be necessary) and the application of the proceeds of the sale to the payment of the costs and expenses of sale, the costs of suit, and the amount due the plaintiff." (Prac. Act, Sec. 246.) To this extent this section is substanstantially as the section was prior to the amendment of it in 1860. In a foreclosure case under the statute, as it formerly stood, a judgment in personam might be rendered against a debtor for the amount due, as well as a decree for the sale of the premises mortgaged (Englund v. Lewis, 25 Cal. 348, 349, and the cases there cited) ; and when a judgment in personam was rendered in an action of foreclosure, it was held in Chapin v. Broder, 16 Cal. 422, that when such judgment was dock-

eted, it became a lien in accordance with the statute—that is, as we understand the opinion, a lien upon all the real property of the judgment debtor in the county not exempt from execution. (Practice Act, Sec. 204.)

The two hundred and forty-sixth section of the Practice Act as amended in 1861 (Laws 1861, p. 306) contains an additional provision which reads as follows : "If it shall appear from the Sheriff's return that there is a deficiency of such proceeds, and a balance still due to the plaintiff, the judgment shall then be. docketed for such balance against the defendant or defendants personally liable for the debt, and shall from the time of such docketing be a lien upon the real estate of the judgment debtor, and an execution may thereupon be issued by the Clerk of the Court, in like manner and form as upon other judgments, to collect such balance or deficiency from the property of the judgment debtor." If it be assumed that the recovery obtained on the 20th of May, 1863, was a judgment *in personam*, followed by a decree of foreclosure and sale, the fact that the debt, to recover which the action was brought, was secured by mortgage, and the further fact that the action was to make the money due by a foreclosure and sale of the mortgaged premises, operated to limit the plaintiff to his remedy to the premises mortgaged, until the same should be exhausted. When exhausted by a sale thereof under the decree, and a balance is ascertained in the mode prescribed to be still due to the plaintiff, the judgment shall be docketed for such balance, and shall from the time of such docketing be a lien upon the real estate of the judgment debtor, and an execution may thereupon be issued in like manner and form as upon other judgments. If this was the only statutory provision relating to the creation of a lien by judgment, we apprehend no question would be made as to the point of time determining its inception. But the two hundred and fourth section of the Act, which has reference to judgments *in personam* generally, provides that from the time the judgment is docketed it shall become a lien on all the real property of the judgment debtor, etc., and that the lien shall

continue for two years, unless the judgment be previously satisfied. The section here referred to does not provide at what time the judgment must be docketed. It may be docketed immediately after the judgment roll is filed, or at any time afterwards while the judgment subsists, for aught that appears in the statute. From the docketing, the judgment encumbers the debtor's real property, and may continue a lien upon it for two years. But with respect to a judgment *in personam* coupled with a decree foreclosing a mortgage, and directing a sale of the mortgaged premises, the judgment is to be docketed for the balance which may remain due after the mortgaged property is exhausted, and from that event, that is, the docketing, the judgment shall be a lien on the debtor's real property, and may thereafter subsist as a lien for two years. If the theory of the respondents was accepted, the entire judgment might exist as a lien for two years from the time it was first docketed, and then, if the mortgaged premises were sold under the decree without satisfying the amount due, the judgment to the extent of the balance remaining due might be docketed again, and from that time the judgment for the balance would be a lien on the debtor's real estate, which would continue for two years, if not sooner paid. Besides this consequence, we should in substance determine the amendment of section two hundred and forty-six to be without purpose or effect. The statute as amended seems to have been designed to limit the remedy of the mortgage creditor to his security, in cases when a decree for sale of mortgaged premises is had, until that was exhausted, and then to give him a lien on all his debtor's real property subject to execution for the balance remaining due, from the time the same should be duly ascertained and the judgment docketed for that balance.

Until the judgment was docketed for the balance due the plaintiff, the premises in controversy did not become encumbered by the judgment, and before then it became the plaintiff's homestead, and consequently was not subject to be sold on the execution issued for the balance due on the judgment.

Upon the facts as they appear in the record, the plaintiffs were entitled to the relief they sought. (*Alverson* v. *Jones*, 10 Cal. 9; *Dunn* v. *Tozer*, 10 Id. 167; *Pixley* v. *Huggins*, 15 Cal. 132; *Pettit* v. *Shepherd*, 5 Paige, 501.)

Judgment reversed and the cause remanded for further proceedings.